UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALTER LEE HALL (#08528-030),

      Plaintiff,

                    CASE NO. 4:15-CV-13771
                    JUDGE TERRENCE G. BERG
                    MAGISTRATE JUDGE ANTHONY P. PATTI

  v.

KEVIN M. CHAPMAN,
NICHOLAS JUKURI and
FRANK O. FINCH,

      Defendants.

_____/

## REPORT AND RECOMMENDATION GRANTING IN PART and DENYING IN PART DEFENDANTS' MARCH 7, 2016 MOTION TO DISMISS (DE 13)

**I.      RECOMMENDATION:**   The Court should grant in part and deny in part

Defendants' March 7, 2016 motion to dismiss (DE 13), as **(a)** the parties agree that

Plaintiff's official capacity claims should be dismissed; **(b)** only those claims

mentioned within AR 815809-F1 (Request for Administrative Remedy) were

administratively exhausted at the time Plaintiff filed this lawsuit on October 23,

2015; **(c)** AR 815809-F1 fairly encompasses only some of Plaintiff's claims in the

original complaint; and **(d)** Plaintiff's original complaint does not state a First

Amendment retaliation claim.

## II.    REPORT:

### A.    Plaintiff's Operative Complaint

Walter Lee Hall (#08528-030) is currently incarcerated at FTC Oklahoma City.[1]   On October 23, 2015, while incarcerated at FCI Milan, Plaintiff filed the instant lawsuit against Officer Chapman (Kevin M. Chapman), N. Jukuri (Nicholas Jukuri) and General Manager Finch (Frank O. Finch).    (DE 1; *see also* DEs 8-10.) Plaintiff sues Defendants in their personal and official capacities.    (*See* DE 1-2; *see also* DE 1 at 18, 22.)

Plaintiff's initial filing consists of a form prisoner civil rights complaint (DE 1 at 1-11), his affidavit (DE 1 at 12-17), a memorandum of law (DE 1 at 18-26), a certificate of service (DE 1 at 27), and several affidavits and exhibits in support (DE 1 at 28 -50, DE 1-1 at 1-13).    The alleged facts underlying this lawsuit occurred during 2014 and 2015.    (DE 1 at 5-10.)    Among other things, Plaintiff alleges retaliation by Defendants Chapman, Jukuri and Finch.    (*See* DE 1 at 9; *see also* DE 1 at 16-17 ¶¶ 12, 17; DE 1 at 18, 22.)[2]

---

[1] (*See* www.bop.gov, "Inmate Locator.")

[2] Plaintiff is also a party to *Hall v. Federal Bureau of Prisons*, Case No. 2:15-cv-12376-AJT-SDD (E.D. Mich.) (filed June 30, 2015), which appears to concern the events of September – October 2013 (DE 1 at 4-5).   In that case, Judge Tarnow entered judgment on August 29, 2016, Plaintiff has filed a notice of appeal, and the Court has denied without prejudice Plaintiff's application to proceed without prepaying fees or costs.

Judge Berg has referred this case to me to conduct pretrial matters.    (DE 5.)

On April 13, 2016, I entered an order denying without prejudice Plaintiff's March

28, 2016 motion to grant amended complaint (DE 15) and holding Defendants'

motion to dismiss (DE 13) in abeyance.    (DE 19.)[3]    In so doing, I noted that

Plaintiff had not complied with E.D. Mich. LR 15.1 and also that the Court was

unable to determine whether an amended was warranted or whether it would be

futile.    (DE 19 at 2-3.)

### B.    Pending Motions

Currently before the Court is Defendants' March 7, 2016 motion to dismiss.

(DE 13.)    Therein, Defendants argue that:    (1) Plaintiff "has no cognizable claim

against Defendants in their official capacities[;]" (2) his equal protection claims

"were not exhausted . . .[;]" and, (3) Defendants are entitled to qualified immunity

as to Plaintiff's First Amendment claim.    (DE 13 at 13-20.)

Plaintiff filed a timely response on March 28, 2016.    (DEs 14, 16.)    He

concedes that his "official capacity claims are . . . barred and should be dismissed."

(DE 16 at 3-4.)    Nonetheless, he contends that his First Amendment and equal

---

[3] My order noted that Defendants' motion to dismiss (DE 13) would be held in abeyance pending the timely filing of a renewed motion to amend – which the Plaintiff did (*see* DE 20) - and this Court's consideration thereof.   Thus, the instant report and recommendation, and an order addressing the motion to amend will issue at the same time.

protection claims have been exhausted.    (DE 16 at 2-3, 4-5.)    Moreover, he

contends that his simultaneously filed motion to amend (DE 15) – which has since

been denied without prejudice (DE 19) - addresses the original complaint's First

Amendment claim defect of which Defendants complain.    (DE 16 at 5-6.)

Defendants filed a reply on April 8, 2016.    (DE 18.)[4]

### C.    Fed. Rules Civ. P. Regarding Dispositive Motions

#### 1.    Motions to Dismiss (Fed. R. Civ. P. 12)

Defendants bring the instant motion pursuant to Fed. R. Civ. P. 12(b)(1),(6).

(DE 13 at 1, 6 and 8.)    When deciding a motion to dismiss under Federal Rule of

Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most

favorable to plaintiff and accept all allegations as true."    *Keys v. Humana, Inc.*, 684

F.3d 605, 608 (6th Cir. 2012).    "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face."    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal

quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(concluding that a plausible claim need not contain "detailed factual allegations," but

it must contain more than "labels and conclusions" or "a formulaic recitation of the

---

[4] Also before the Court is Plaintiff's May 10, 2016 motion for leave to file an
amended complaint (DE 20 at 1-3), which is accompanied by a proposed first
amended complaint (DE 20 at 4-13), and regarding which a response (DE 23) and
reply (DE 28) have been filed.    This motion will be addressed under separate cover.

4

elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Furthermore, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).[5]

---

[5] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

## 2.    Motions for Summary Judgment (Fed. R. Civ. P. 56)

The Court recognizes that, in the wake of the Supreme Court's decision that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints[,]" *Jones v. Bock*, 549 U.S. 199, 216 (2007), it is appropriate to consider a dispositive motion asserting such a defense as one seeking summary judgment.   For example, the Sixth Circuit has noted that "[a] defendant who moves for summary judgment on th[e] defense [of failure to exhaust administrative remedies] bears the burden to show there was an absence of evidence to support the nonmoving party's case."   *Lee v. Willey*, 789 F.3d 673, 680 (6th Cir. 2015); *see also Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012) ("Defendants bore the burden of production and persuasion on the issue of exhaustion. They did not present evidence that shows the absence of a genuine dispute of fact as to whether Surles exhausted his administrative remedies. Therefore, Defendants were not entitled to summary judgment on the issue.").[6]

As to any issue that the Court decides to address under Fed. R. Civ. P. 56, it is

---

[6] The Sixth Circuit has made similar observations in at least two unpublished, post-*Jones* cases.   *See Browder v. Ankrom*, 473 F. App'x 499, 500 (6th Cir. 2012) ("the district court properly awarded summary judgment to Estes and Buchanan because Browder failed to comply with the administrative exhaustion requirement of 42 U.S.C. § 1997e(a)."); and *McClain v. Mason Cty., KY*, 618 F. App'x 262, 265–266 (6th Cir. 2015) ("we reverse the district court's grant of summary judgment insofar as it related to McClain's April 8, 2012, grievance.").

important to note that, "[w]here a Rule 12(b)(6) motion to dismiss is converted into a summary judgment motion by acceptance of outside evidence, care must be taken to assure that the nonmoving party is afforded advance notice as required by Rule 56 and an adequate opportunity to show why summary judgment should not be granted." *McDonald v. Seabold*, 780 F.2d 1022 (6th Cir. 1985). "The absence of such notice is particularly disturbing where the plaintiff is a prisoner and is not represented by counsel." *Id*. (finding error where "plaintiff was not given notice of the district court's intention to treat the 12(b)(6) motion as one for summary judgment.").

However, such concern is not present here, where Plaintiff's response to Defendants' Fed. R. Civ. P. 12 motion to dismiss acknowledges that, due to his attachment of "a sworn affidavit and other material outside of the pleadings," Defendants' motion to dismiss his equal protection claims as unexhausted should be addressed as a Fed. R. Civ. P. 56 motion for summary judgment. (*See* DE 13 at 14-16, DE 16 at 4-5.) Moreover, while evidence of AR Nos. 815809, 839039 and/or 839043 was attached to Defendants' motion to dismiss (DE 13-4) and Plaintiff's response (DE 16 at 8-18, 19-27), evidence of AR No. 815809 was attached to Plaintiff's complaint (DE 1 at 46-50, DE 1-1 at 1-6.). *See Gumble v. Waterford Twp.*, 171 F. App'x 502, 507 (6th Cir. 2006) (finding that the district Court did not err in failing to convert the motion to dismiss to a motion for summary judgment where

7

"the attachments to which [Plaintiff] refers were referenced in the complaint and were public records . . . .").   Thus, those issues below that are decided based upon references to Plaintiff's original complaint or its attachments may be addressed under Fed. R. Civ. P. 12.

### D.   Discussion

#### 1.   Factual background and Plaintiff's original complaint

"UNICOR is the trade name for Federal Prison Industries (FPI): a wholly owned, self-sustaining Government corporation that sells market-priced services and quality goods made by inmates."[7]   Employment at UNICOR is subject to certain rules and regulations.   (*See* DE 1 at 35-41.)

##### a.   Claims against Chapman based on the events of September and October 2014

The general allegations underlying Plaintiff's complaint begin during June or July 2014, when Plaintiff was allegedly working for UNICOR at Milan FCI in the "Paint A" Department and Defendant Chapman was the "Paint A" Department supervisor.   (DE 1 at 5-6.)   According to Plaintiff, he eventually secured a job as an inventory clerk.   (DE 1 at 6.)   Plaintiff alleges that, at some point, he "correct[ed] C/O Chapman's mis-statements a few times while Plaintiff Hall, Otis Jackson and other inmate Unicor workers were having general conversations[,]"

---

[7] *See* https://www.bop.gov/inmates/custody_and_care/unicor.jsp.

and that this was followed by "a formulation of dislike and ill feelings towards Plaintiff Hall . . ." and "lead to C/O Chapman deciding to make his life here at FCI-Milan a living hell."    (DE 1 at 5; *see also* DE 1 at 12 ¶ 1; DE 1 at 19.)

Specifically, Plaintiff alleges that, during September 2014, Defendant Chapman singled Plaintiff out to have his pay docked.    (DE 1 at 6.)    Plaintiff further alleges that, during October 2014, Defendant Chapman again singled Plaintiff out and interfered with his ability to earn overtime and perhaps even with his job assignment.    (DE 1 at 7, 9-10.)    (*See also* DE 1 at 12-14 ¶¶ 1-9, DE 1 at 16 ¶ 14, DE 1 at 18-22.)[8]

Based on these allegations, it seems Plaintiff intends to bring a First Amendment retaliation claim against Defendant Chapman and, arguably, an equal protection claim to the extent he claims Chapman singled him out.

### b.    Claims against Finch based on the events of November 2014

Plaintiff claims he spoke with Defendant Finch on November 25, 2014 about alleged harassment by Defendant Chapman, yet Finch did not take corrective action or intervene to prevent constitutional violations by "his lower staff member . . . ." (DE 1 at 8-9.)    According to Plaintiff, Defendant Finch "signed off on Unicor

---

[8] In support of his claim(s) against Defendant Chapman, Plaintiff provides the affidavits of Otis Jackson (#43376-424) (DE 1 at 28-30) and Tyler Green (#10151-027) (DE 31-32).

papers which lead to Plaintiff Hall being forced off his Inventory Clerk job . . . ." Plaintiff contends that, for several months, he "worked part-time and los[t] one grade as [he] went from grade 1 to 2, a demotion which resulted in roughly loss of pay of $175.00 monthly."   (DE 1 at 9.)

Plaintiff also claims he spoke with Defendant Finch a second time, on or about November 30, 2014, "about how C/O Chapman was harassing him and why he was forced off his Inventory Clerk job."   Yet, Defendant Finch did not take any action.   (DE 1 at 9.)   (*See also* DE 1 at 15-16 ¶¶ 11, 13, DE 1 at 23-24.)

Based on these allegations, it seems that Plaintiff intends to bring a First Amendment retaliation claim against Defendant Finch based upon the events of November 2014, either because he failed to take corrective actions or because he caused Plaintiff's demotion.

### c.   Claims against Finch and Jukuri based on the events of May 2015

Plaintiff claims that, during May 2015, Defendants Finch and Jukuri reassigned two "white male inmates" – Dyer (#14184-026) and Allen (#69291-061) – with "no loss of grade and full time."   Yet, Plaintiff contends he was "demoted by one grade and put on part-time status at Unicor . . . ."   (DE 1 at 9.)[9]   (*See also* DE 1 at 15-16 ¶ 12, DE 1 at 23-24.)

---

[9] A quick note about conspiracy is in order.   At the tail end of the October 20, 2015

These allegations appear to allege that Finch and Jukuri denied Plaintiff the right to "equal protection of the laws[,]" *see* U.S. Const. amend. XIV,[10] and perhaps even allege that these Defendants engaged in retaliation.

---

memorandum of law attached to Plaintiff's October 23, 2015 original complaint, Plaintiff states that "C/O Chapman likely conspired with N. Jukuri by swiping out Plaintiff Hall and another inmate Unicor worker from Paint-A to Welding and then from Welding to Paint-A." (DE 1 at 26.) Moreover, in his March 28, 2016 response, Plaintiff mentions an "on-going conspiracy" between Defendants Jukuri, Finch and Chapman. (DE 16 at 2, 4.) "'It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983' or *Bivens*." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987)). Thus, the Court does not treat Plaintiff's brief mention of conspiracy as a separate cause of action. Instead, conspiracy will be considered when the Court addresses Plaintiff's pending motion for leave to file an amended complaint, as Plaintiff's proposed first amended complaint attempts to bring such a claim. (*See* DE 20.)

[10] Within his affidavit and the memorandum of law attached to his original complaint, Plaintiff refers to both the Fifth and Fourteenth Amendments in connection with the "equal protection clause." (*See* DE 1 at 17, 20, 22, 25.) Given that the Defendants are employees of the federal government and that the phrase "equal protection of the laws" appears only in the Fourteenth Amendment, I note the following: "[W]hile the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is 'so unjustifiable as to be violative of due process.'" *Schneider v. Rusk*, 377 U.S. 163, 168 (1964) (quoting *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). The Supreme Court's "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment." *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment ... burdens a fundamental right, targets a suspect class, or has no rational basis." *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 256 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 2013, 195 L. Ed. 2d 216 (2016) (quoting *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano,* 648 F.3d 365, 379 (6th

### d.   Claims against Jukuri based on the events of September 2015

Plaintiff claims he had worked at UNICOR for approximately 8 years "with no problems [and] no missed days . . . ."   (DE 1 at 7-8.)   According to Plaintiff, he woke up late on September 8, 2015 and did not make it to work until 7:30 a.m. Although it was his first time being tardy, he did not receive a warning.   (DE 1 at 8.)   Instead, Defendant Jukuri issued Plaintiff an incident report for an "unexcused absence from work or assignment."   (DE 1 at 8,   43.)   The September 11, 2015 committee action and/or recommendation - that Plaintiff receive loss of preferred housing and loss of job – was signed by non-party D. Swetz.   (DE 1 at 44.)[11]

Plaintiff maintains that both he and Inmate Sutcliffe (#08182-030) were more than 15 minutes late; yet, "Mr. Hall received and was found guilty of a Code 310 misconduct report but 'similarly situated' individuals such as white male Adam Sutcliffe . . . w[ere] not written a misconduct report . . . ."   (DE 1 at 8.)   (*See also* DE 1 at 14-15 ¶ 10, DE 1 at 22-23.)   In support of his claim(s) against Defendant Jukuri, Plaintiff provides the affidavit of Adam Sutcliffe.   (DE 1 at 33-34.)   Thus,

---

Cir.2011)).

[11] Swetz is described as the member of the Unit Discipline Committee (UDC) who imposed the sanctions of loss of preferred housing and loss of job.   (*See* DE 1 at 8, 15, 23.)   Plaintiff seeks to add Swetz as a Defendant in the pending motion for leave to file an amended complaint (DE 20), which this Court will address under separate cover.

it seems that this claim against Defendant Jukuri is also based upon the denial of his right to equal protection.

## 2.     Exhaustion of administrative remedies

### a.     Exhaustion generally

Defendants argue that Plaintiff's equal protection claims were not exhausted and should, therefore, be dismissed.    (DE 13 at 14-16.)    "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a).   "The plain language of the statute makes exhaustion a *precondition* to filing an action in federal court . . . ."    *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (external citations omitted) (emphasis added).

The Federal Bureau of Prisons' Administrative Remedy Program is set forth in Program Statement 1330.18.    *See also* 28 C.F.R. §§ 542.10-542.19.    "The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."    28 C.F.R. § 542.10(a).    The procedure begins with informal resolution (28 C.F.R. § 542.13), continues with initial filing on Form BP-9 (28 C.F.R. § 542.14) and concludes with appeals on Forms BP-10 and BP-11 (28 C.F.R. § 542.15).

13

As the Supreme Court has instructed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). "Appeal to the General Counsel [(Form BP-11)] is the final administrative appeal." 28 C.F.R. § 542.15.

### b.   Grievances potentially at issue

Attached to Defendants' motion for summary judgment are screen prints reflecting several administrative remedies Plaintiff has pursued. (*See* DE 13-4.) Given the time period and subject matter at issue in this case, and considering how the FBOP characterized Plaintiff's grievances on these screen prints, it appears the following grievances from that list are potentially relevant:

- **Administrative Remedy No. 808450** was received on January 27, 2015 (F1) and sought to "remain free from retaliation / job & grade back[.]" (DE 13-4 at 27.)

- **Administrative Remedy No. 815809** and its various steps were received on March 31, 2015 (F1) – *with Warden J. A. Terris responding on April 17, 2015* - April 27, 2015 (R1) and June 18, 2015 (A1). This grievance also petitioned to "remain free from retaliation / job & grade back[.]" (DE 13-4 at 28-30; *see also* DE 1 at 46-50, DE 1-1 at 1-6.)

- **Administrative Remedy No. 839039** and its various steps were received on October 15, 2015 (F1) - *with Warden Terris responding on October 30, 2015* - and November 17, 2015 (R1)

14

and wherein Plaintiff "want[ed] UDC [Unit Discipline
Committee] expunged, cite[d] [harassment] / retaliation[.]"
(DE 13-4 at 31, 35; *see also* DE 16 at 9-18.)

- **Administrative Remedy No. 839043** and its various steps were
received on October 15, 2015 (F1) – *with Warden Terris
responding on October 30, 2015* - and November 16, 2015 (R1)
and wherein Plaintiff "want[ed] UDC sanctions [expunged] /
claim[ed] staff disrimin[.]"   (DE 13-4 at 32, 34; *see also* DE
16 at 20-27.)

- **Administrative Remedy No. 842104** and its various steps were
received on November 13, 2015 (F1) and December 14, 2015
(R1) and wherein Plaintiff "claim[ed] discrimination want[ed]
[the] Warden to discipline[.]"   (DE 13-4 at 33, 36.)

(*See* DE 13-4.)

> ### c.   AR Nos. 839039, 839043 and 842104 were not exhausted at the time Plaintiff's original complaint was filed.

Plaintiff's response that his First Amendment and Equal Protection Clause
claims have been exhausted relies upon Administrative Remedy No. 839039 (DE
16 at 8-18) and Administrative Remedy No. 839043 (DE 16 at 19-27).   (DE 16 at
2-3, 4-5.)   However, based upon Warden Terris's October 30, 2015 responses
(Forms BP-229) to these Requests for Administrative Remedy (Forms BP-9) (*see*
DE 16 at 14, 25), each of these grievances had just concluded the "initial filing"
contemplated by 28 C.F.R. § 542.14 when Plaintiff filed the instant lawsuit on
October 23, 2015 (DE 1).   In other words, these grievances were not

15

administratively exhausted, as they had yet to proceed through the "appeals" contemplated by 28 C.F.R. § 542.15.   In fact, it appears that the first appeals in AR Nos. 839039-R1 and 839043-R1 (Forms BP-10) were not received by the Regional Director until mid-November 2015, and the related responses (Forms BP-230) are dated January 2016.   (DE 13-4 at 34-35, DE 16 at 11-12, 22-23.)   Moreover, Defendants maintain that Plaintiff's Central Office appeals in these grievances (BP-11s) were filed on February 8, 2016, several months after this lawsuit was filed.   (DE 18 at 2; *see also* DE 18 at 3 n.1.)   "The prisoner . . . may not exhaust administrative remedies during the pendency of the federal suit." *Freeman*, 196 F.3d at 645 (external citation omitted).[12]   Thus, AR Nos. 839039 and 839043 cannot operate to exhaust Plaintiff's administrative remedies as to the claims in his October 23, 2015 original complaint.   (DE 1.)   The same can be said of AR 842104-F1 (Request for Administrative Remedy), which was received on November 13, 2015 – approximately three weeks following the filing of this lawsuit.   (DE 13-4 at 33, 36.)

> **d.   AR No. 815809 was exhausted at the time Plaintiff's original complaint was filed.**

---

[12] *See also* FBOP, Program Statement 1330.18 ("In many cases, courts require a proper Appeal to the General Counsel before an inmate may pursue the complaint in court.").

On the other hand, the claims that are described in AR No. 815809 were administratively exhausted on August 3, 2015 – the date of the FBOP's response to Plaintiff's AR No. 815809-A1 (Central Office Administrative Remedy Appeal). (DE 1 at 46, DE 13-4 at 30.)   Thus, claims described in this administrative remedy were exhausted at the time this lawsuit was initiated on October 23, 2015.

Nonetheless, Defendants argue that AR No. 815809 does not mention Plaintiff's equal protection claims.   (DE 18 at 2.)   As noted above, the Federal Bureau of Prisons (FBOP) characterized AR No. 815809 as a request/petition to "remain free from retaliation / job & grade back."   (DE 13-4 at 28-30.)   This grievance progressed as follows:

- On March 16, 2015, Plaintiff completed an **"Attempt at Informal Resolution."**   Among other things, this grievance complains of preferential treatment by Chapman in violation of FBOP policy during September and October 2014.   (DE 1-1 at 5-6; *see also* 28 C.F.R. § 542.13.)[13]

- On March 22, 2015, Plaintiff completed a **"Request for Administrative Remedy."**   *This grievance concerns the events of September, October and November 2014, and it names Chapman and Finch*.   (DE 1-1 at 3-4; *see also* 28 C.F.R. § 542.14.)

_____

[13] Although Plaintiff specifically cites Program Statement 3420.09 (*see* DE 1 at 13 ¶ 6, DE 1 at 20; *see also* DE 1 at 48, DE 1-1 at 1, 4, 6), this report presumes Plaintiff is referring to Program Statement 3420.11 ("Standards of Employee Conduct"), which provides, in part:   "An employee may not show favoritism or give preferential treatment to one inmate, or a group of inmates, over another."

17

- On April 17, 2015, Warden J.A. Terris responded, characterizing the grievance as alleging that "a UNICOR staff member acted unprofessionally[,]" and requesting that his "previous job be reinstated."   The response explains that Plaintiff's allegation was referred to the appropriate authority for review and further explains that Plaintiff's request for reinstatement of his job was addressed in AR No. 808450-F1 (Request for Administrative Remedy).   (DE 1-1 at 2.)

- On April 23, 2015, Plaintiff completed a **"Regional Administrative Remedy Appeal."**   This regional appeal mirrors his earlier described request and takes issue with Warden Terris's response.   (DE 1 at 50, DE 1-1 at 1; *see also* 28 C.F.R. § 542.15.)

- On May 11, 2015, Regional Director Laird responded.   (DE 1 at 49.)

- On June 9, 2015, Plaintiff completed a **"Central Office Administrative Remedy Appeal."**   In addition to several paragraphs repeated from his original request and his regional appeal, Plaintiff's central office appeal adds the following two paragraphs:

  "Inmate Hall is putting the BOP on notice that he plans to pursue a Federal Tort Claim action against the Bureau of Prisons for preferential treatment and racial discrimination which [stems] from inmate freely express[ing] his speech in violation of his First Amendment Rights, thus all conduct, ther[e]after arose as mere retaliation which violat[es] . . . his First Amendment Rights and the Bureau of Prisons is liable in the matter herein."

  "Recently [seemingly during May 2015], Unicor Supervisor Finch and C/O Jukuri reassigned [two] White male inmates, however inmate Dyer #14184-026 moved from Pres Dept. to Welding 'no loss of grade and full-time' and inmate Allen #69291-061 was moved to Press Dept. 'no loss of grade and

18

full time'.   As the record in Unicor will reflect that inmate
Hall and another individual who are Black male inmates were
demo[t]ed and los[t] grades and inmate Hall is now on
part-time status in Unicor.   All [t]his is retaliatory and in clear
violation of his First Amendment Rights."

(DE 1 at 9, 47-48; *see also* 28 C.F.R. § 542.15.)

- On August 3, 2015, National Inmate Appeals Administrator,
  Ian Connors, responded.   (DE 1 at 46.)

(DE 1 at 46-50, DE 1-1 at 1-6.)

### e.   AR No. 815809-F1 (Request for Administrative Remedy) properly exhausts only some of Plaintiff's claims in the original complaint.

Addressing Plaintiff's claims against Defendants in the order described

above, it is clear that the § 542.14 initial filing of AR No. 815809-F1 (BP-9)

exhausts only some of the claims in Plaintiff's original complaint.

### i.   Plaintiff's claims against Defendants Chapman and Finch concerning the events of September, October and November 2014

Plaintiff's March 22, 2015 AR No. 815809-F1 (Request for Administrative

Remedy), which was received on March 31, 2015, fairly encompasses Plaintiff's

claims against Defendants Chapman and Finch concerning the events of September,

October and November 2014.   (*Compare* DE 1 at 6-10; DE 1-1 at 3-4.)   This

would include the assertions in Plaintiff's affidavit that Defendant Chapman

exercised "preferential treatment" in violation of FBOP 3420.11 during September

2014 and October 2014.   (DE 1 at 13 ¶ 6, DE 1 at 14 ¶ 8; *see also* DE 1 at 20, 21.)
It would also include the assertions in Plaintiff's affidavit against Finch regarding
the events of November 25, 2014 and November 30, 2014.   (DE 1 at 15 ¶ 11, DE 1
at 16 ¶ 13; *see also* DE 1 at 23-24.)   In fact, with the exception of the events of
November 30, 2014, such allegations were contained within each of three stages of
the formal administrative remedy process for AR 815809.   (*See* DE 1 at 48, DE
1-1 at 1, 4.)

          **ii.**      **Plaintiff's claims against Finch and Jukuri that
arose out of the events of May 2015**

Whether AR 815809 exhausted Plaintiff's claims against Finch and Jukuri
alleging "preferential treatment and racial discrimination" that arose out of the
events of May 2015 is not as straightforward.   (*See* DE 1 at 9 (Complaint); *see
also* DE 1 at 16, 17 (Affidavit); DE 1 at 18, 23, 24, 25 (Memorandum of Law).)
This is so, because these claims were not mentioned until Plaintiff's June 9, 2015
central office appeal (Form BP-11).   (DE 1 at 47-48.)

The Supreme Court has instructed that "[c]ompliance with prison grievance
procedures . . . is all that is required by the PLRA to 'properly exhaust.'"   *Jones v.
Bock*, 549 U.S. 199, 218 (2007).   With respect to the initial filing – or the
"Administrative Remedy Request" (Form BP-9) - the FBOP regulation provides
that "[t]he inmate shall place a single complaint or a reasonable number of closely

related issues on the form[,]" and further provides that "[i]f the inmate includes on a single form multiple unrelated issues, the submission shall be rejected and returned without response, and the inmate shall be advised to use a separate form for each unrelated issue."   28 C.F.R. § 542.14(c)(2).   Moreover, with respect to appeals – the regulation provides not only that "[a]ppeals shall state specifically the reason for appeal[,]" but also that "[a]n inmate may not raise in an Appeal issues not raised in the lower level filings."   28 C.F.R. § 542.15(b)(1),(2).

Defendants maintain that Plaintiff's failure to mention race until the "Central Office Administrative Remedy Appeal" (Form BP-11) requires the Court to conclude that Plaintiff "did not exhaust his complaint at all three levels of the [BOP] grievance process, and cannot bring an Equal Protection claim before this Court."   (DE 13 at 15-16.)   In other words, citing 28 C.F.R. §§ 542.14 and 542.15, Defendants maintain that Plaintiff "has not exhausted his administrative remedies until he has filed his complaint at all three levels and has been denied at all three levels."   (DE 13 at 15.)

Looking strictly to Plaintiff's March 2015 AR No. 815809-F1 (Request for Administrative Remedy) (DE 1-1 at 3-4) and 28 C.F.R. § 542.15(b)(2) leads to the conclusion that Plaintiff's claims against Finch and Jukuri that arose out of the events of May 2015 were *not* exhausted by AR 815809-F1.   Nonetheless, the Sixth

21

Circuit "has refused to enforce procedural requirements when 'prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits.'"   *Lee v. Willey*, 789 F.3d 673, 680 (6th Cir. 2015) (quoting *Reed–Bey v. Pramstaller,* 603 F.3d 322, 325 (6th Cir.2010)). Thus, before determining that these claims have not been properly exhausted, the Court must determine whether the FBOP addressed such claims on the merits, notwithstanding the fact that that they were raised "too late in the game."   To answer this question, the Court looks to Administrator Connor's August 3, 2015 response to AR No. 815809-A1 (Central Office Administrative Remedy Appeal) – the grievance appeal which raised these claims.   As the Court reads the FBOP's response to Plaintiff's central office appeal, Plaintiff's recent claims of retaliation and discrimination, as well as his previous claim of unprofessional conduct, are mentioned; however, these claims are addressed simply by referring to the Warden's and Regional Director's responses, each of which noted that Plaintiff's allegations of staff misconduct were referred to the appropriate authority for review. (DE 1 at 46, 49; DE 1-1 at 2.)   In other words, Plaintiff's recent claims of retaliation and discrimination were not addressed or "considered" on the merits. *Lee*, 789 F.3d at 680.   Therefore, it is fair to say that Plaintiff's claims against

Finch and Jukuri that arose out of the events of May 2015 were not properly exhausted by AR No. 815809.

### iii.   Plaintiff's claim(s) against Defendant Jukuri that arose out of the events of September 2015

Finally, based on timing, AR No. 815809 – which concluded its path through the administrative appeal process during August 2015 - could not have exhausted Plaintiff's claim(s) against Defendant Jukuri that arose out of the events of September 2015.   (*See* DE 1 at 7-8, 43-44; *see also* DE 13 at 16.)

### 3.   First Amendment

Plaintiff alleges that he "freely express[ed] his right to freedom of speech . . ." and "C/O Chapman has repeatedly retaliated against Plaintiff Hall for violating his constitutional rights."   (DE 1 at 9; *see also* DE 1 at 16 ¶ 12, DE 1 at 21-22.) Plaintiff also claims that Defendants "are all liable for preferential treatment and racial discrimination which repeated acts of retaliation . . . ."   (DE 1 at 16-17 ¶ 17; *see also* DE 1 at 18.)   As noted above in Section II.D.1(a),(b), Plaintiff attempts to allege First Amendment retaliation claims against Defendants Chapman and Finch based upon the events of September, October and November 2014.

Defendants argue that they are entitled to qualified immunity from Plaintiff's First Amendment claim(s) against them.   (DE 13 at 16-20.)[14]   However,

_____

[14] By way of background, "government officials performing discretionary functions

Defendants' qualified immunity argument is more accurately characterized as asserting that Plaintiff has failed to state a First Amendment retaliation claim upon which relief may be granted.   (DE 13 at 17-20; *see also* DE 18 at 3-5.)   "A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).   Specifically, Defendants contend that:   **(a)** "correcting misstatements" does not constitute protected conduct; **(b)** "[d]isallowance of overtime and even reassignment" do not constitute adverse actions; and, **(c)** Plaintiff has not pleaded facts that "connect his correction of Chapman's misstatements with any subsequent adverse action."   (DE 13 at 18-20.)

Whatever are the merits of any First Amendment retaliation claim contained within his original complaint, Plaintiff "punts" as to this issue.   Instead of countering Defendants' argument that he has not stated a First Amendment retaliation claim upon which relief may be granted, Plaintiff refers to his

generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

24

concurrently filed motion for leave to file an amended complaint (DE 15), which

Plaintiff alleges "eliminates the basis for the motion to dismiss."   (DE 16 at 5-6.)

Unfortunately, this leaves the Court with little to evaluate, as Plaintiff's March 28,

2016 motion to amend was denied without prejudice on April 13, 2016.   (DEs 17,

19).

       Still, to the extent Plaintiff's original complaint relies upon Plaintiff

"correcting C/O Chapman's mis-statements" (DE 1 at 5) as "protected conduct," the

Court agrees with Defendants that such actions "are not the sort of 'protected

conduct' recognized in this circuit as cognizable under the First Amendment."

(DE 13 at 18.)   "[C]ertain provisions of the Constitution define individual rights

with which the government generally cannot interfere—actions taken pursuant to

those rights are 'protected' by the Constitution."   *Thaddeus-X*, 175 F.3d at 387.

Plaintiff's First Amendment claim is seemingly based upon "the freedom of

speech."   (DE 1 at 5, 9.)   However, the subject of Plaintiff "correcting C/O

Chapman's mis-statements" is unclear, and a prisoner's First Amendment right to

freedom of speech is not unlimited.   As the Sixth Circuit has instructed:

> Because of the inherent problems involved in the operations of
> correctional facilities, prison administrators are afforded great latitude
> in the execution of practices and policies that "are needed to preserve
> internal order and discipline and to maintain institutional security."
> *Bell v. Wolfish,* 441 U.S. 520, 547[] (1979).   Accordingly, prison
> administrators, and not the courts, make the difficult decisions

associated with day-to-day prison operations.   *See Turner v. Safley,* 482 U.S. 78, 89[] (1987).   And an inmate's speech is not protected by the First Amendment if it is "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."   *Pell v. Procunier,* 417 U.S. 817, 822[] (1974).

*Goldsmith v. Sharrett*, 614 F. App'x 824, 829 (6th Cir. 2015) ("Certainly MDOC has a valid interest in regulating prisoners' writings that include sexually explicit content involving prison staff and the like."); *see also Griffin v. Berghuis*, 563 F. App'x 411, 415 (6th Cir. 2014) ("his letter is unprotected if its prohibition by prison officials is 'reasonably related to legitimate penological interests.'") (*quoting Turner v. Safley*, 482 U.S. 78, 89 (1987)); *Vandiver v. Martin*, 48 F. App'x 517, 520 (6th Cir. 2002) ("Because VanDiver has not established that he was engaging in protected First Amendment activity as a warden's forum representative, his retaliation claim against these three prison officials fails.").   Here, even assuming as truthful Plaintiff's allegation that he corrected C/O Chapman's misstatements, Plaintiff has not stated that the correction of any such misstatements constituted protected conduct.[15]

### E.   Conclusion

---

[15] The Court recognizes that Plaintiff's currently pending May 10, 2016 motion to amend is accompanied by a proposed first amended complaint, wherein Plaintiff discusses "retaliation," as well as "protected conduct," "adverse action," and "causal connection."   (*See* DE 20 at 1-3, DE 20 at 4-13.)   The Court will address this argument under separate cover.

Consistent with the foregoing discussion, Plaintiff has conceded that his official capacity claims should be dismissed (Section II.B).    Furthermore, only those claims mentioned within AR 815809-F1 (Request for Administrative Remedy) were administratively exhausted at the time this lawsuit was filed on October 23, 2015 (Section II.D.2.d).    Moreover, AR 815809-F1 fairly encompasses only some of the claims in Plaintiff's original complaint, namely his claims against Defendants Chapman and Finch concerning the events of September, October and November 2014; however, this grievance did not operate to exhaust Plaintiff's claims against Finch and/or Jukuri arising out of the events of May 2015 and/or September 2015 (Section II.D.2.e).    Finally, Plaintiff's original complaint does not state a First Amendment retaliation claim based on the events of September, October and November 2014 (Section II.D.3).    Therefore, since Plaintiff's only exhausted claims against Defendant Finch are for First Amendment violations, he has failed to state a claim against this particular defendant.[16]

In sum, the Court should grant in part and deny in part Defendants' March 7, 2016 motion to dismiss (DE 13), with only Plaintiff's personal capacity equal protection claims against Defendant Chapman concerning the events of September

---

[16] In contrast to these claims, and for the reasons explained above, it is not necessary for the Court to determine if Plaintiff's has properly stated First Amendment claims against Defendants Finch and Jukuri based on the events of 2015, because these claims were simply not exhausted.

and October 2014 - which Defendants have not asked this Court to review for

failure to state a claim under Rule 12 - surviving the dispositive motion at bar.

*See, Sanders v. Michigan Dep't of Corr.*, No. 10-15041, 2011 WL 3957555, at *2

(E.D. Mich. Sept. 8, 2011) (personal capacity Equal Protection claims permitted to

go forward).

## III.   PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).   Failure to

file specific objections constitutes a waiver of any further right of appeal.   *Thomas*

*v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d

505 (6th Cir. 1991).   Filing objections that raise some issues but fail to raise others

with specificity will not preserve all the objections a party might have to this Report

and Recommendation.   *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390,

401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,

1273 (6th Cir. 1987).   Pursuant to Local Rule 72.1(d)(2), any objections must be

served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2,"

*etc.*   Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.   Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.   Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).   The response must specifically address each issue raised in the

objections, in the same order, and labeled as "Response to Objection No. 1,"

"Response to Objection No. 2," *etc.*   If the Court determines that any objections

are without merit, it may rule without awaiting the response.


Dated: December 12, 2016              s/Anthony P. Patti
                                      Anthony P. Patti
                                      UNITED STATES MAGISTRATE JUDGE




I hereby certify that a copy of the foregoing document was sent to parties of record
on December 12, 2016, electronically and/or by U.S. Mail.

                                      s/Michael Williams
                                      Case Manager for the
                                      Honorable Anthony P. Patti