UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALTER LEE HALL (#08528-030),

       Plaintiff,

                  CASE NO. 4:15-CV-13771
                  JUDGE TERRENCE G. BERG
                  MAGISTRATE JUDGE ANTHONY P. PATTI

   v.

KEVIN M. CHAPMAN,
NICHOLAS JUKURI and
FRANK O. FINCH,

       Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART and DENYING IN PART
PLAINTIFF'S MAY 10, 2016 MOTION FOR LEAVE TO FILE AN
AMENDED COMPLAINT (DE 20)**

**I.     OPINION**

     **A.    Plaintiff's Current, Operative Complaint**

Walter Lee Hall (#08528-030) is currently incarcerated at FTC Oklahoma

City.[1]   On October 23, 2015, while incarcerated at FCI Milan, Plaintiff filed the

instant lawsuit against Officer Chapman (Kevin M. Chapman), N. Jukuri (Nicholas

Jukuri) and General Manager Finch (Frank O. Finch).   (DE 1; *see also* DEs 8-10.)

---

[1] (*See* www.bop.gov, "Inmate Locator.")

Plaintiff sues Defendants in their personal and official capacities.   (*See* DE 1-2; *see also* DE 1 at 18, 22.)

Judge Berg has referred this case to me to conduct pretrial matters.   On April 13, 2016, I entered an order denying without prejudice Plaintiff's March 28, 2016 motion to grant amended complaint and holding Defendants' motion to dismiss in abeyance.   (DE 19.)   In so doing, I noted that Plaintiff had not complied with E.D. Mich. LR 15.1 and also that the Court was unable to determine whether an amendment was warranted or whether it would be futile.   (DE 19 at 2-3.)

### B.   Plaintiff's Motion for Leave to File an Amended Complaint

Currently before the Court are two motions:   **(1)** Defendants' March 7, 2016 motion to dismiss (DE 13), regarding which the Court has recently entered a December 12, 2016 report recommending dismissal of certain aspects of Plaintiff's original complaint (DE 30); and **(2)** Plaintiff's May 10, 2016 motion for leave to file an amended complaint, which is accompanied by a proposed first amended complaint (DE 20).

Defendants have filed a response.   (DE 23.)   Plaintiff has filed a reply. (DE 28.)

### C.   Fed. R. Civ. P. 15 ("Amended and Supplemental Pleadings")

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleadings at this stage of the proceedings only after obtaining leave of court. The Rule provides that the Court should freely give leave for a party to amend its pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Nevertheless, leave to amend 'should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.'" *Carson v. U.S. Office of Special Counsel*, 663 F.3d 487, 495 (6th Cir. 2011) (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)).

The same standard of review and rationale apply to a motion to supplement under Fed. R. Civ. P. 15(d) as to a motion to amend under Fed. R. Civ. P. 15(a). *Spies v. Voinovich*, 48 F. App'x 520, 527 (6th Cir.2002). "The granting or denial of motions under Fed. R. Civ. P. 15(a) to amend pleadings after responsive pleading have been served and of motions under Fed. R. Civ. P. 15(d) to supplement pleadings is within the sound discretion of the trial court." *McCormack v. Frank*, No. 93–5416, 1994 WL 419589, 5 (6th Cir. Aug. 10, 1994) (citing cases).

> **D.  Discussion**
>
>> **1.  The Court has recommended that only a portion of Plaintiff's original complaint survives Defendants' dispositive motion.**

3

In the Court's December 12, 2016 report, I opined that Plaintiff's original complaint consisted of claims against Chapman based on the events of September and October 2014, claims against Finch based on the events of November 2014, claims against Finch and Jukuri based on the events of May 2015, and claims against Jukuri based on the events of September 2015.   (DE 30 at 8-13.)   I then concluded that AR Nos. 839039, 839043 and 842104 were not exhausted at the time Plaintiff filed his original complaint, AR No. 815809 was exhausted at the time Plaintiff filed his original complaint, but *AR No. 815809-F1 properly exhausted only some of Plaintiff's claims in the original complaint*.   (*Id*. at 13-23.) Furthermore, I concluded that Plaintiff had not stated the "protected conduct" aspect of a First Amendment retaliation claim.   (*Id*. at 23-26.)   Finally, I concluded that, if the Court agreed with my report and recommendation, then *only Plaintiff's personal capacity equal protection claims against Defendant Chapman concerning the events of September and October 2014 should survive Defendants' dispositive motion*.   (*Id*. at 26-28.)

## 2.   There are several differences between the original and proposed first amended complaints.

At the outset, I notice at least three differences between the original complaint (without its attachments) and the proposed first amended complaint. First, Plaintiff's proposed amended complaint seeks to add Defendant D. Swetz,

who is described as a Milan FCI H-Unit Counselor.    (*Compare* DE 1 at 1-2, DE 20 at 4-5.)

Second, the original and proposed amended complaints differ in length and content.    (*Compare* DE 1 at 5-10, DE 20 at 8-12.)    Although the original complaint contains a 10-page attachment titled, "memorandum of law in support of granting *Bivens* civil action," (*see* DE 1 at 18-28), the "Statement of Facts" which makes up the core of Plaintiff's original complaint spans the period from July 2014 through September 2015; yet, it is not delineated into causes of action.    By comparison, the core of Plaintiff's proposed first amended complaint – while still concerning the alleged events of July 2014 through September 2015 - contains what appear to be related claims for:    **(a)** retaliation in violation of the First Amendment; **(b)** conspiracy; and, **(c)** violation of his right to equal protection.    At the same time, it provides less detail, such as dates, regarding the facts underlying the complaint.    (*Compare* DE 1 at 5-10, DE 20 at 8-12.)

Third, the proposed amended complaint's prayer for relief increases the compensatory damages sought from $5,000.00 to $10,000.00.    (*Compare* DE 1 at 11, DE 20 at 13.)

> **3.    The Court will not permit Plaintiff to amend his original complaint with Plaintiff's proposed first amended complaint in its current form.**

5

Here, the question before the Court is whether it should allow Plaintiff to amend his original complaint to add Defendant Swetz and to substitute Plaintiff's claims as set forth in his original complaint with his claims as set forth in his proposed first amended complaint.   Defendants oppose Plaintiff's motion "on the grounds of futility."   (DE 23 at 1, 8-9.)   Each of Defendants' five sub-arguments (*see* DE 23 at 9-18) will be addressed as follows:

> **a.   AR No. 815809 was exhausted at the time Plaintiff's original complaint was filed on October 23, 2015.**

In response to Plaintiff's May 10, 2016 motion for leave to file an amended complaint, *Defendants argue that Plaintiff "did not exhaust most of the items in his amended complaint before bringing the instant suit."   (DE 23 at 9-10.)*   My December 12, 2016 report and recommendation regarding Defendants' March 7, 2016 dispositive motion thoroughly discussed the issue of exhaustion and ultimately concluded that, of the five (5) seemingly relevant grievances – AR Nos. 808450, 815809, 839039, 839043 & 842104 - only AR 815809 was exhausted at the time Plaintiff's original complaint was filed.   (DE 30 at 13-23).

Plaintiff's August 8, 2016 reply to the instant motion does argue that there is "good cause for the failure to exhaust," that his claims "are not plainly meritless," and that he "did not engage in dilatory tactics[,]" thus authorizing the Court to stay this lawsuit and hold it in abeyance "while administrative remedies are fully

exhausted with the Bureau of Prisons . . . ."    (*See* DE 28 at 2-5.)    Moreover,

Plaintiff suggests the Court find the existence of "special circumstances," as he

asserts his claims "are now fully exhausted . . . ."    (DE 28 at 5-6.)

To begin, and as pointed out in the Court's report and recommendation (DE

30 at 13), "[t]he plain language of [42 U.S.C. § 1997e(a)] makes exhaustion a

precondition to filing an action in federal court . . . ."    *Freeman v. Francis*, 196

F.3d 641, 645 (6th Cir. 1999) (external citations omitted).    That being said, and

consistent with the conclusions reached in the recent report and recommendation,

the Court here finds that Plaintiff has only exhausted certain claims within his

proposed first amended complaint, specifically:    **AR No. 808450** was apparently

only pursued through the initial filing (28 C.F.R. § 542.14, Form BP-9) (*see* DE 30

at 14, 18); **AR Nos. 839039, 839043 and 842104** were not exhausted at the time

Plaintiff's original complaint was filed (*see* DE 30 at 15-16); and **AR No. 815809**

was exhausted at the time Plaintiff's original complaint was filed (DE 30 at 16-19).

Thus, it would be futile to permit Plaintiff to amend his complaint to add

claims regarding which administrative remedies had not been exhausted by October

23, 2015.    Stated otherwise, only the claims within Plaintiff's proposed first

amended complaint that are described in AR No. 815809 were administratively

exhausted at the time this lawsuit was initiated.    As Defendants point out,

7

"Plaintiff may bring a separate suit based on the items contained in his -39 and -43 grievances, but he may not include those claims in this suit, and they should be *dismissed without prejudice* for failure to exhaust."   (DE 23 at 10 (emphasis added).)

> **b.    AR No. 815809 properly exhausts only some of the proposed first amended complaint's claims against existing Defendants Chapman, Jukuri and Finch and newly proposed Defendant Swetz.**

The bulk of Plaintiff's proposed first amended complaint against current Defendants Chapman, Jukuri, and Finch and newly proposed Defendant Swetz is contained in approximately six (6) pages.   (*See* DE 20 at 8-13.)   Within these pages, the Court discerns claims of First Amendment retaliation, conspiracy and violation of his right to equal protection.

> **i.    First Amendment retaliation, Defendants Chapman and Finch, and the events of September, October and November 2014**

Plaintiff's proposed first amended complaint alleges that Defendants retaliated against him.   (*See* DE 20 at 9-12.)   "A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in

part by the plaintiff's protected conduct."   *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Specifically, Plaintiff alleges that:   (1) he engaged in *protected conduct* (such as securing a job at Milan FCI Unicor and exercising his right to freedom of speech, presumably by making use of the administrative grievance process); (2) he was subjected to *adverse action* (such as Defendant Chapman taking Plaintiff's inventory clerk job, docking Plaintiff's pay, taking Plaintiff off the overtime list, and starting rumors; and Defendants reclassifying him and removing him from H-Unit Referred Housing Unit); and, (3) there is a *causal connection* between the protected conduct and adverse action.   (*See* DE 20 at 10-12.)

### Defendant Chapman and the events of September and October 2014

Although Plaintiff's March 2015 "Request for Administrative Remedy" AR No. 815809-F1 generally complains about the events of June or July 2014, Plaintiff specifically grieved disparate treatment by Defendant Chapman during September 2014 – singling Plaintiff out and docking his pay - and October 2014 – singling Plaintiff out and interfering with overtime, perhaps interfering with Plaintiff's job assignment, and perhaps having a hand in a negative evaluation.   (*See* DE 1-1 at 3-4.)   Defendants concede that AR 815809 exhausts Plaintiff's First Amendment claim that "Chapman made disparaging remarks about plaintiff, took him off the

overtime list, docked his pay for tardiness, and moved him from his inventory clerk position in retaliation for 'protected conduct.'"   (DE 23 at 14.)

As an initial matter, I note that "failure to exhaust is an affirmative defense under the PLRA," and that "inmates are not required to specially plead or demonstrate exhaustion in their complaints."   *Jones v. Bock*, 549 U.S. 199, 216 (2007).   Therefore, in its assessment of Plaintiff's motion to amend his complaint, the Court will focus its efforts on the proposed amendments that Defendants specifically oppose.

For starters, Defendants oppose Plaintiff's proposed First Amendment retaliation claim to the extent it asserts that **protected conduct** included Plaintiff securing a job at Milan FCI Unicor, and they assert that they have not discovered "authority supporting the assertion that simply holding a prison job is protected by the First Amendment."   (DE 20 at 10, DE 23 at 7, 14.)   However, Plaintiff's proposed retaliation claim alleges he engaged in protected conduct *not only* when he secured a job at Milan FCI Unicor (which he claims is "protected conduct" under the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151-169, although he does not specify which section) *but also* when he exercised his right to freedom of speech (presumably by making use of the administrative grievance process). (*Compare* DE 20 at 10-12, DE 28 at 8, DE 28 at 15 ¶ 11.)   "An inmate has an

10

undisputed First Amendment right to file grievances against prison officials on his

own behalf."   *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).[2]

Therefore, even if Plaintiff securing a job at FCI Milan-Unicor was not

"protected conduct," Plaintiff's engagement in the grievance procedure is.

Moreover, while the exact grievances to which Plaintiff refers are not clarified in

the proposed first amended complaint, Defendants note that "Plaintiff has filed

eighteen administrative grievances while in BOP custody," and it appears Plaintiff's

pursuit of these grievances began at least during the time period from on January

30, 2004 through March 4, 2006.   (DE 23 at 3, DE 13-4.)   Therefore, at the very

least, Plaintiff's proposed first amended complaint alleges that he engaged in

protected conduct when pursuing the prison's administrative grievance process.

Plaintiff claims that he was subjected to **adverse actions**.   As will be

addressed in further detail below, Defendant Jukuri's issuance of the September 8,

2015 incident report, and the resulting September 11, 2015 consequences, were not

addressed in AR No. 815809, whose administrative process was exhausted on

August 3, 2015.   (DE 1 at 43-44, 46.)   Defendants' having only responded that

the loss of job and housing reassignment were not adverse actions or that such

---

[2]  "This right is protected, however, only if the grievances are not frivolous."
*Herron*, 203 F.3d at 415.

actions were not "clearly established" as adverse (*see* DE 23 at 15-16),[3]  Defendants either concede or fail to contest that the other assertions - Chapman's alleged docking of Plaintiff's pay, removing Plaintiff from the overtime list or starting rumors – qualify as "adverse actions."   Therefore, at the very least, Plaintiff's proposed first amended complaint alleges that he was subjected to adverse action when Defendant Chapman docked Plaintiff's pay, took Plaintiff off the overtime list, and started rumors.

This leaves the issue of **causal connection**.   Here, too, Defendants limit their specific argument to Swetz's alleged retaliatory motive – presumably in issuing the September 11, 2015 response to the September 8, 2015 incident report. (DE 1 at 43-44, DE 23 at 16-17.)   In other words, not having argued otherwise, Defendants appear to concede that Plaintiff's proposed first amended complaint *alleges* that the protected conduct of filing grievances caused Defendant Chapman to dock Plaintiff's pay, take him off the overtime list and/or start rumors about him.

**Defendant Finch and the events of
November 2014 (personal involvement)**

---

[3]  Defendants' arguments as to "adverse action" and "protected conduct" are based upon assumptions that the -39 and -43 grievances were properly exhausted before this lawsuit was initiated.   (*See* DE 23 at 14-17.)   Having previously concluded that only AR 815809 was exhausted prior to the initiation of this lawsuit, the Court need not address the 2nd and 3rd prongs of Defendants' *Thaddeus-X* argument.

12

Again, although Plaintiff's March 2015 "Request for Administrative Remedy" AR No. 815809-F1 complains about the events of June or July 2014 generally, his specific allegations include a desire to inform Warden Terris that he had spoken to Defendant Finch during November 2014 about the situation with Defendant Chapman.   (*See* DE 1-1 at 3-4.)   While Plaintiff's original complaint seemingly asserted a First Amendment retaliation claim against Defendant Finch based upon the events of November 2014, either because he failed to take corrective actions or because he caused Plaintiff's demotion, Plaintiff's proposed first amended complaint is less forthcoming as to any such claims against Defendant Finch.   (*Compare* DE 1 at 8-9, DE 20 at 8-11; *see also* DE 30 at 9-10.)   However, assuming for the sake of argument that Plaintiff's proposed first amended complaint contained the same level of detail as to a claim or claims against Defendant Finch arising out of the events of November 2014, I note here, as I did in my recent report and recommendation, that such claims were grieved by AR No. 815809.   (DE 1 at 48, DE 1-1 at 1, 4; *see also* DE 30 at 19-20.)

*Even so, Defendants contend that "Finch lacks personal involvement in the allegedly retaliatory actions."   (DE 23 at 11-12.)*   Apparently referencing the original complaint's specific allegations concerning Finch (*see* DE 1 at 8-9), Defendants state:   "plaintiff alleges that defendant Finch refused to remedy the

13

perceived wrongs against plaintiff in Unicor, but he does not allege that Finch took

any affirmative actions that violated his constitutional rights.    Nor does he allege

that Finch took any action or failed to act with respect to the loss of H-Unit

housing."    (DE 23 at 12.)    In the "unexecuted affidavit" attached to his reply,

Plaintiff refers to his June 2015 AR No. 815809-A1 (Form BP-11) and states:

> I spoke to General Manager Finch on November 25, 2014, at approx.
> 12:45 p.m. about how Kevin Chapman was harassing me and forcing
> me off my Inventory Clerk job in Unicor here at FCI-Milan. This
> Court should be fully aware that General Manager Finch took "no
> action" or never intervene[d] to prevent his lower staff member from
> violating my constitutional rights. Instead General Manager Finch was
> aware of everything and participated within a[] conspiracy to
> reta[l]iate against me for exercising my rights to freedom of speech.

(DE 28 at 14-15 ¶ 10; *see also* DE 1 at 47-48.)

However, to the extent Plaintiff claims that Defendant Finch is liable for the

actions of his "lower staff member," the Supreme Court has instructed:    "In a §

1983 suit or a *Bivens* action—where masters do not answer for the torts of their

servants—the term 'supervisory liability' is a misnomer.    Absent vicarious

liability, each Government official, his or her title notwithstanding, is only liable for

his or her own misconduct."    *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

Moreover, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a

plaintiff must plead that each Government-official defendant, through the official's

own individual actions, has violated the Constitution."    *Ashcroft v. Iqbal*, 556 U.S.

14

662, 676 (2009).   Furthermore, liability under 42 U.S.C. § 1983 "must be based on more than respondeat superior, or the right to control employees."   *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).   "[A] failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it.   At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982).   Therefore, Plaintiff's proposed amended complaint, even as informed by his original complaint,[4] does not state a First Amendment retaliation claim against Defendant Finch based upon the events of November 2014.

## Qualified immunity

*Defendants argue that "Plaintiff's First Amendment claims do not survive the qualified immunity analysis."   (DE 23 at 12-17.)*   "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

---

[4] Plaintiff's original complaint alleges that Defendant Finch "signed off on Unicor papers which lead to Plaintiff Hall being forced off his Inventory Clerk job . . .[,]" seemingly during November 2014.   (*See* DE 1 at 9, 15, 24.)   However, this seeming allegation of "adverse action" does not appear in Plaintiff's proposed first amended complaint.   (*See* DE 20 at 4-13.)

constitutional rights of which a reasonable person would have known."   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Nonetheless, the Court need not address Defendants' limited qualified immunity argument, as:   **(a)** it only concerns whether the punishments meted out on September 11, 2015 as a result of the September 8, 2015 misconduct – loss of job and loss of housing - were "clearly established" as adverse actions (DE 23 at 15-16); and, **(b)** these actions were not the subject of the only administrative remedy to be exhausted prior to the filing of this lawsuit (AR No. 815809). Likewise, the Court need not address Plaintiff's related, alternative suggestion of conducting discovery limited to the issue of qualified immunity.   (*See* DE 28 at 7-9.)

Given the procedural posture of this case, and under the circumstances outlined above, to address Defendants' limited qualified immunity argument would cast an opinion as to the merit of a defense regarding a claim not properly before the Court.

### ii.   Equal Protection, Defendant Chapman and the events of September and October 2014

In his proposed first amended complaint, Plaintiff seems to assert that Defendant Chapman disparately treated similarly situated individuals.   (*See* DE 20 at 11.)   Plaintiff also alleges that Defendants violated Plaintiff's "Equal Protection

16

rights under the Fifth Amendment and Fourteenth Amendment . . . ."    (DE 20 at

12; *see also* DE 20 at 9, 10.)[5]    Defendants argue that Plaintiff has not stated an

equal protection claim as to certain defendants.    (DE 23 at 17-18.)

"To state an equal protection claim, a plaintiff must adequately plead that the

government treated the plaintiff disparately as compared to similarly situated

persons and that such disparate treatment ... burdens a fundamental right, targets a

suspect class, or has no rational basis."    *Bible Believers v. Wayne Cty., Mich.*, 805

F.3d 228, 256 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 2013, 195 L. Ed. 2d 216

(2016) (quoting *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano,* 648 F.3d 365, 379

(6th Cir.2011)).

As an initial matter, the Court is somewhat perplexed by Defendants'

interpretation of the proposed amended complaint's equal protection claim:

> While plaintiff's proposed amended complaint claims that defendant
> Jukuri treated him differently based upon his race when Jukuri failed
> to write a white inmate a misconduct report for essentially the same
> conduct as plaintiff, plaintiff makes no factual allegations regarding
> disparate treatment with respect to defendants Chapman and Finch, or
> proposed defendant Swetz.

(DE 23 at 17-18.)    It seems that Defendants are referring to allegations made in

Plaintiff's original complaint (*see* DE 1 at 8-9), rather than in the proposed first

---

[5] Given that the Defendants are employees of the federal government, the Court
directs the parties' attention to the December 12, 2016 report and recommendation's
discussion of "equal protection of the laws" and the Fifth and Fourteenth
Amendments.    (*See* DE 30 at 11-12 n.10.)

amended complaint (DE 20 at 4-13).    In any event, any such claim would not have been exhausted by AR No. 815809.    This is so, because the September 8, 2015 misconduct report post-dates the August 31, 2015 response to Plaintiff's June 18, 2015 final administrative appeal, AR 815809-A1 (*see* DE 1 at 43, BOP Program Statement No. 1330.18).    Thus, the issuance of the misconduct ticket could not have been the subject of AR 815809 – the only grievance exhausted at the time this lawsuit was initiated - during any of its stages.

The Court does not interpret Plaintiff's May 10, 2016 proposed first amended complaint as stating an equal protection claim *against Jukuri*. (*See* DE 20 at 4-13.) Instead, the *motion* for leave to file an amended complaint mentions Equal Protection violations alleged *in his original complaint*.    (DE 1, DE 20 at 1.) More importantly, the *proposed first amended complaint* mentions that Defendants violated Plaintiff's right to equal protection.    (*See* DE 20 at 12.)    This claim appears to be based upon the following statement:

> Because of Walter L. Hall's well-documented claims of events that occurred by Defendant Chapman and *the disparate treatment of similarly situated individuals* establishes a causal connection between the protected conduct and the adverse action in the matter herein.

(DE 20 at 11 (emphasis added).)    Then, in the "unexecuted affidavit" attached to his reply, Plaintiff alleges that his right to equal protection was violated when only his pay was cut during September 2014 when "everyone else is also getting a one

18

hour break." (DE 28 at 13 ¶ 6.) He also alleges that, on October 16, 2014, he was the only department employee that Chapman took off of the overtime list. (DE 28 at 14 ¶ 8.)[6]

Having reviewed Plaintiff's proposed first amended complaint (DE 20 at 11-12) and having been further informed by Plaintiff's "unexecuted affidavit" attached to his reply (DE 28 at 13-14), it is the undersigned's opinion that Plaintiff intended any equal protection claim set forth in the proposed first amended complaint (DE 20 at 4-13) to be brought against Defendant Chapman concerning the September 2014 pay cut and the October 2014 overtime, and these events are discussed in Plaintiff's "Request for Administrative Remedy," AR No. 815809-F1 (DE 1-1 at 3-4).

### iii.    Defendants Finch and Jukuri and the events of May 2015 and September 2015

In his original complaint, Plaintiff alleged claims against Defendants Finch and Jukuri based on the events of May 2015 and against Defendant Jukuri based on the events of September 2015. (*See* DE 1 at 8-9; *see also* DE 30 at 10-13.) Plaintiff's proposed first amended complaint is less forthcoming as to any such claims against Defendants Finch and Jukuri. (*See* DE 20 at 8-11.) However,

---

[6] Here, I note that AR 815809-A1 (Central Office Administrative Remedy Appeal) arguably encompasses Plaintiff's claim of racial discrimination (DE 1 at 46-48), and Defendants' equal protection argument does not assert otherwise (DE 23 at 17-18).

even assuming that Plaintiff's proposed first amended complaint contained the same level of detail as to a claim or claims against Defendant Jukuri, I conclude here, as I did in my recent report and recommendation, that Plaintiff's claims against Finch and Jukuri that arose out of the events of May 2015 were not properly exhausted by AR No. 815809 and also that this grievance could not have exhausted Plaintiff's claim(s) against Defendant Jukuri that arose out of the events of September 2015. (*See* DE 30 at 20-23.)   Thus, it would be futile to raise such claims in an amended complaint in the instant lawsuit.

### iv.   Conspiracy and the events of September 2015[7]

Defendants argue that Plaintiff's proposed first amended complaint "does not state a conspiracy claim."   (DE 23 at 10-11.)   "A civil conspiracy claim under § 1983 or *Bivens* lies where there is an agreement between two or more persons to injure another by unlawful action.   To prevail on such a claim in this context, [a plaintiff] must demonstrate that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed" in furtherance of the conspiracy that caused the injury."   *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (internal

---

[7] In one of his proposed conspiracy claims, Plaintiff cites Mich. Comp. Laws § 600.5855 ("Fraudulent concealment of claim or identity of person liable, discovery"). (DE 20 at 11) in lieu of 42 U.S.C. § 1985 ("Conspiracy to interfere with civil rights"). Based on its title, it appears Plaintiff cited the Michigan statute in error.

quotations and external citations omitted).    "'It is well-settled that conspiracy

claims must be pled with some degree of specificity and that vague and conclusory

allegations unsupported by material facts will not be sufficient to state such a claim

under § 1983' or *Bivens*."    *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)

(quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987)).

In his proposed first amended complaint, Plaintiff alleges that Defendants

Chapman, Jukuri, Finch and Swetz "conspir[ed] to remove [him] from his job at

FCI-Milan Unicor and remov[e] [him] from H-Unit Referred Housing."    (DE 20 at

8-9; *see also* DE 20 at 12 ¶ 6.)    In addition, and apparently in anticipation of

satisfying the "overt act" element of a conspiracy claim, Plaintiff lists "unlawful

overt acts of conspiracy[,]" apparently culminating in the September 11, 2015

actions of "loss of preferred housing" and "loss of job."    (DE 20 at 12 ¶¶ 6-9; *see

also* DE 1 at 44.)    On the other hand, Defendants contend that Plaintiff "loosely

claims 'conspiracy'" and "makes no allegations as to where, when, and how an

agreement was made between them to do so; which defendants took which actions

to bring about these results; and why proposed defendant Swetz took these actions."

(DE 23 at 10-11.)

The Court finds that, whatever detail Plaintiff has offered about the

conspiracy claim within his proposed first amended complaint, it was not the

subject of AR No. 815809.    To be sure, Plaintiff offers the August 2, 2016

affidavit of Benjamin P. Foreman (#12658-040) as proof of a conspiracy.    (DE 28

at 8, 16-17).)    Among other things, Mr. Foreman attests as follows:

> On or about *Wednesday, September 9, 2015; or Thursday, September
> 10, 2015; or Friday, September 11, 2015*, during the meal line
> rotation, I was in front of the FCI-Milan Barbershop standing waiting
> on my barber to show up to cut my hair, I happened to walk towards
> the entry of the FCI-Milan UNICOR Factory, I [saw] the Defendants'
> Kevin Chapman; D. Swetz; N. Jukuri; and General Manager Finch all
> standing at the entry way of FCI-Milan UNICOR Factory, I heard
> Defendant Kevin Chapman say to H-Unit Counselor D. Swetz that
> "you know we've been talking to you back and forth about inmate
> Walter Hall, I personally need and want him out of UNICOR for good
> and he needs to be taught a lesson for having such a big mouth and all
> the write ups he's made so see to it that he's moved out of H-Unit
> permanently ok can you do that for us Swetz?" H-Unit Counselor
> Stetz replied "oh yes, I can do that as, I don't care for him either."

(DE 28 at 16 ¶ 1 (emphasis added).)[8]

However, Plaintiff's proposed first amended complaint (DE 20 at 8-9, 12) –

further informed by Mr. Foreman's affidavit (DE 28 at 16 ¶ 1) - makes clear that

Plaintiff's proposed conspiracy claim is based on events that took place following

the September 8, 2015 misconduct ticket, and such events could not have been

---

[8] Then, in Plaintiff's "unexecuted affidavit," he contends that Defendant Finch "was
aware of everything and participated within a[] conspiracy to reta[liate] against
[Plaintiff] for exercising [his] rights to freedom of speech."    (DE 28 at 14-15 ¶ 10.)
Moreover, Plaintiff contends that Defendants "certainly conspired to ensure that
[Plaintiff] was fired from FCI-Milan Unicor and removed from H-Unit Referred
Housing Unit to reta[liate] against [Plaintiff] for exercising [his] protected conduct
[his] right to freedom of speech . . . ."    (DE 28 at 15 ¶ 11.)

grieved in AR No. 815809.   Therefore, any claims based on such events were unexhausted at the time this lawsuit was initiated.   Furthermore, it appearing that Plaintiff's proposed claim against Swetz is limited to his involvement with the September 11, 2015 "loss of preferred housing" and "loss of job," (DE 20 at 9; *see also* DE 1 at 44), and that any such claim is unexhausted by AR No. 815809, *it would thus be futile to amend Plaintiff's complaint to add Swetz as a defendant*.

### E.   Conclusion

Consistent with the foregoing discussion regarding Plaintiff's proposed first amended complaint (DE 20 at 4-13), only those claims mentioned within AR 815809 were administratively exhausted at the time this lawsuit was filed on October 23, 2015.   (Section I.D.3.a.)   As to First Amendment retaliation, the proposed first amended complaint, at most, states such a claim against Chapman concerning the events of September and October 2014, but it does not state such a claim against Defendant Finch concerning the events of November 2014.   (Section I.D.3.b.i.)   With respect to equal protection, the proposed first amended complaint, at most, states such a claim as to Defendant Chapman concerning the September 2014 pay cut and the October 2014 overtime, events which were discussed in AR No. 815809.   (Section I.D.3.b.ii.)   Any proposed claims against Defendants Finch and Jukuri arising out of the events of May 2015 and September 2015 were not

exhausted by AR No. 815809.   (Section I.D.3.b.iii.)   Finally, Plaintiff's proposed conspiracy claim appears to be based on events which occurred after the September 8, 2015 misconduct ticket; thus, such claim was unexhausted at the time this lawsuit was filled.   (Section I.D.3.b.iv.)

Given Plaintiff's *pro se* status, and given that Plaintiff's equal protection allegations appear in differing detail in Plaintiff's original complaint than in Plaintiff's proposed first amended complaint (*compare* DE 1 at 5-7, 9-10; DE 20 at 11-12), a quick note about the effect of filing an amended complaint is appropriate here.   "Normally, an amended complaint supersedes the original complaint." *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 456 (2009); *see also Drake v. City of Detroit, Michigan*, 266 F. App'x 444, 448 (6th Cir. 2008) ("[A]n amended complaint supercedes all prior complaints.")   Moreover, Plaintiff's instant motion does not appear to request supplementation under Fed. R. Civ. P. 15(d), having only cited Fed. R. Civ. P. 15(a).   (*See* DE 20 at 1-2; see also *Clark v. Johnston*, 413 F. App'x 804, 812 (6th Cir. 2011) ("Clark did not clearly indicate that he intended his amended pleading to supplement, rather than supersede, his original pleading. Accordingly, it was appropriate for the district court to rely solely on the amended pleading in making its rulings.").)   Therefore, once Plaintiff files his first amended complaint, it will be the operative pleading in this case, and any claim

within it may be subjected to dispositive motion practice, such as a motion to

dismiss under Fed. R. Civ. P. 12 or a motion for summary judgment under Fed. R.

Civ. P. 56.

## II.   ORDER

Upon consideration, Plaintiff's motion (DE 20 at 1-3) for leave to file an

amended complaint (DE 20 at 4-13) is **GRANTED IN PART** and **DENIED IN**

**PART**.   No later than 21 days following this Court's disposition of Defendants'

March 7, 2016 motion to dismiss (DE 13), Plaintiff **SHALL** filed a first amended

complaint which conforms to this order and any other order filed in this case.

Plaintiff is reminded that any such filing **MUST** be served upon defense counsel.

**IT IS SO ORDERED.**

Dated: December 21, 2016          s/Anthony P. Patti
                                  Anthony P. Patti
                                  UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record
on December 21, 2016, electronically and/or by U.S. Mail.

                                  s/Michael Williams
                                  Case Manager for the
                                  Honorable Anthony P. Patti