UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALTER LEE HALL (#08528-030),

        Plaintiff,

                      CASE NO. 4:15-CV-13771
                      JUDGE TERRENCE G. BERG
                      MAGISTRATE JUDGE ANTHONY P. PATTI

  v.

KEVIN M. CHAPMAN,

        Defendant.

_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (DEs 45,
38)**

I.    **RECOMMENDATION:**   The Court should **GRANT** Defendant

Chapman's motion to dismiss Plaintiff's amended complaint.

II.    **REPORT:**

    **A.**    **Plaintiff's Operative, Amended Complaint**

    Walter Lee Hall (#08528-030) is currently incarcerated at El Reno FCI in

Oklahoma.   (*See* www.bop.gov, "Inmate Locator.")   On October 23, 2015, while

incarcerated at FCI Milan, Plaintiff filed this lawsuit against Officer Chapman

(Kevin M. Chapman), N. Jukuri (Nicholas Jukuri) and General Manager Finch

(Frank O. Finch).[1]

Judge Berg has referred this case to me to conduct pretrial matters.    (DE 5.)

On April 13, 2016, I entered an order denying without prejudice Plaintiff's March

28, 2016 motion to amend complaint and holding Defendants' motion to dismiss in

abeyance.    (DEs 13, 15, 19.)   On December 21, 2016, I entered an opinion and

order granting in part and denying in part Plaintiff's May 10, 2016 motion for leave

to file an amended complaint.    (DEs 20, 33.)

On February 17, 2017, Judge Berg entered an order modifying my report and

recommendation and denying Defendants' motion to dismiss as moot, noting that

Plaintiff's January 17, 2017 amended complaint superseded his original complaint.

(DE 42.)    Defendant, Kevin M. Chapman, a Federal Bureau of Prisons (FBOP)

employee, is the sole Defendant in the amended complaint; in other words, he is the

only active defendant in this case.

### B.    Pending Motions

Currently before the Court is Defendant Chapman's March 27, 2017 motion

to dismiss the amended complaint, wherein Defendant argues that:    (1) Plaintiff

---

[1] Plaintiff is a party in two other cases in this Court:    **(a)** *Hall v. Federal Bureau of Prisons*, Case No. 2:15-cv-12376-AJT-SDD (E.D. Mich.) (judgment entered in favor of Defendant FBOP August 29, 2016, judgment affirmed December 15, 2017) and **(b)** *Hall v. Chapman, et al.*, Case No. 4:17-cv-10895-TGB-APP (E.D. Mich.).

"has no cognizable claim against Chapman in his official capacity[;]" (2) his retaliation claim "was not exhausted . . .[;]" and, (3) he is entitled to qualified immunity as to Plaintiff's First Amendment retaliation claim.   (DE 45 at 17-28.) A timely response and reply have been filed.   (DEs 46, 49, 50.)

### C.    Standards for Dispositive Motions

#### 1.    Motions to Dismiss (Fed. R. Civ. P. 12)

Defendant brings the instant motion pursuant to Fed. R. Civ. P. 12(b)(1),(6). When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true."   *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 556 U.S. at 678.   "The plausibility of an inference

depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).[2]

## 2.    Motions for Summary Judgment (Fed. R. Civ. P. 56)

Defendant also brings this motion pursuant to Fed. R. Civ. P. 56. The Court recognizes that, in the wake of the Supreme Court's decision that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to

---

[2] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

specially plead or demonstrate exhaustion in their complaints[,]" *Jones v. Bock*, 549

U.S. 199, 216 (2007), it is appropriate to consider a dispositive motion asserting such

a defense as one seeking summary judgment.   For example, the Sixth Circuit has

noted that "[a] defendant who moves for summary judgment on th[e] defense [of

failure to exhaust administrative remedies] bears the burden to show there was an

absence of evidence to support the nonmoving party's case."   *Lee v. Willey*, 789 F.3d

673, 680 (6th Cir. 2015); *see also Surles v. Andison*, 678 F.3d 452, 458 (6th Cir.

2012) and *Browder v. Ankrom*, 473 F. App'x 499, 500 (6th Cir. 2012).

As to any issue that the Court decides to address under Fed. R. Civ. P. 56, it is

important to note that, "[w]here a Rule 12(b)(6) motion to dismiss is converted into a

summary judgment motion by acceptance of outside evidence, care must be taken to

assure that the nonmoving party is afforded advance notice as required by Rule 56

and an adequate opportunity to show why summary judgment should not be granted."

*McDonald v. Seabold*, 780 F.2d 1022 (6th Cir. 1985).   "The absence of such notice

is particularly disturbing where the plaintiff is a prisoner and is not represented by

counsel."   *Id*. (finding error where "plaintiff was not given notice of the district

court's intention to treat the 12(b)(6) motion as one for summary judgment.").

However, such concern is not present here.   While Rule 12 makes provisions

for the "result of presenting matters outside the pleadings[,]" Fed. R. Civ. P. 12(d),

the Court does not rely upon Defendant Chapman's March 23, 2017 affidavit attached to his motion.   (*See* DE 45-6; see also DE 49 at 1-2.)   Moreover, while evidence of AR No. 777400 and other grievance information was attached to Defendant's motion to dismiss (DE 45-5), evidence of AR No. 815809 was attached to Plaintiff's amended complaint (DE 38 at 23-35).   As discussed in more detail below, this is the grievance upon which Plaintiff relies.   *See Gumble v. Waterford Twp.*, 171 F. App'x 502, 507 (6th Cir. 2006) (finding that the district Court did not err in failing to convert the motion to dismiss to a motion for summary judgment where "the attachments to which [Plaintiff] refers were referenced in the complaint and were public records . . . .").   Thus, those issues below that are decided based upon references to Plaintiff's amended complaint or its attachments may be addressed under Fed. R. Civ. P. 12.

### D.   Discussion

#### 1.   First Amendment retaliation claims

"UNICOR is the trade name for Federal Prison Industries (FPI): a wholly owned, self-sustaining Government corporation that sells market-priced services and quality goods made by inmates."   Employment at UNICOR is subject to certain rules and regulations.   (*See* DE 38 at 16-22.)   At the time of the events underlying this lawsuit, Plaintiff had worked for UNICOR for eight years, during

which time he eventually secured a job as an inventory clerk, a "top tier job."   (DE 38 at 2-3.)

The general allegations underlying Plaintiff's complaint begin around July 2014, when Plaintiff was allegedly working for UNICOR at Milan FCI in the "Paint A" Department and Defendant Chapman was the "Paint A" Department supervisor. (DE 38 at 2.)   Plaintiff alleges that Chapman's dislike of him was evident from the beginning of Chapman's tenure in that position, including once allegedly informing Plaintiff, "[I do] not think [you] should have that job."   (DE 38 at 2-3.)   The pleadings allege that, at some point, Plaintiff "corrected 'mis-statements' a few times in the presen[ce] of other inmates," and that this led to "a hatred, and eventually widespread retail[a]tory actions against the plaintiff," and made his life a "Living Hell."   (DE 38 at 2.)   The specifics of these misstatements and corrections are not provided in the amended complaint.   Nor are they provided in his attached supporting declaration (of Otis Jackson), through which Plaintiff vaguely alleges that Chapman:

> started giving inmate Walter Hall a *hard time* after he exercised his right to freedom of speech by correcting Mr. Chapman's mis-statements while inmate Hall, several inmates and Mr. Chapman & I were having general convers[at]ions[.]   I believe this lead to Mr. Chapman *somewhat drawing the conclusion* that inmate Hall thinks he[']s better than the other inmates.

(DE 38 at 11) (emphases added).    In any case, as explained in my prior report and recommendation, "to the extent Plaintiff's original complaint relies upon Plaintiff 'correcting C/O Chapman's mis-statements' (DE 1 at 5) as 'protected conduct,' the Court agrees with Defendants that such actions 'are not the sort of 'protected conduct' recognized in this circuit as cognizable under the First Amendment.'" (DE 30 at 25) (quoting DE 13 at 18).)    As further explained, "the subject of Plaintiff 'correcting C/O Chapman's mis-statements' is unclear, and a prisoner's First Amendment right to freedom of speech is not unlimited."    (DE 30 at 25-26 (citing and block quoting *Goldsmith v. Sharrett*, 614 F. App'x 824, 829 (6th Cir. 2015) and further citing and parenthetically quoting *Griffin v. Berghuis*, 563 F. App'x 411, 415 (6th Cir. 2014))).

Plaintiff is somewhat more specific as to six instances of retaliation during September and October 2014, such as:    singling him out to have his pay docked, interfering with his ability to earn overtime, reassigning him to a different position, and lowering his pay grade.    (DE 38 at 3-6.)    In support of his claim(s) against Defendant Chapman, Plaintiff provides the affidavits of Otis Jackson (#43376-424) (DE 38 at 9-11), Tyler Green (#10151-027) (DE 38 at 12-13), and Adam Sutcliffe (#08182-030) (DE 38 at 14-15).

Plaintiff's complaint does not delineate causes of action with separate headings.   He asserts claims of "retaliation for filing and following the Administrative process a First Amendment Right, and his protected conduct claim." (DE 38 at 7.)   Early in his factual allegations, and again in his "conclusion," he makes use of language such as "protected conduct," "adverse action(s)," and "caus[a]l connection…."   (DE 38 at 2, 7.)   Taken together, it is clear that his claims against Defendant Chapman are based upon retaliation for engaging in the First Amendment protected activity of petitioning "the Government for a redress of grievances[,]" by way of the FBOP's administrative grievance procedure.

### 2.    Official capacity claims

Plaintiff sues Defendant in his personal and official capacities, going so far as to allege that, on October 16, 2014, Defendant was "acting in his official capacity." (DE 38 at 1, 6.)   Plaintiff seeks only monetary damages in his amended complaint. (DE 38 at 7.)   Defendant argues that sovereign immunity bars Plaintiff's official capacity claims.   (DE 45 at 17-18.)   I agree.

Although Plaintiff previously conceded that "sovereign immunity bars an official capacity action for money damages against federal employees . . . [,]" (DE 16 at 3-4), here he simply replies that he "has addressed the issue of sovereign immunity[,]" his claim "is not barred by sovereign immunity . . . [,]" and his

retaliation claim "should not be dismissed on the ground of sovereign immunity."
(DE 49 at 2.)   He was right the first time.

"[A] suit against a state official in his or her official capacity is not a suit
against the official but rather is a suit against the official's office."   *Will v.
Michigan Department of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v.
Holt*, 469 U.S. 464, 471 (1985)).   "As such, it is no different from a suit against the
State itself."   *Will*, 491 U.S. at 71.   Therefore, Plaintiff's complaint against
Defendant Chapman in his official capacity is a lawsuit against the federal
government, which remains immune to suit in a *Bivens* action – the type of lawsuit
presumably at issue here.   *Nuclear Transp. & Storage, Inc. v. United States*, 890
F.2d 1348, 1351-1353 (6th Cir. 1989) (Atomic Energy Act); *Bivens v. Six Unknown
Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 410 (1971)
("However desirable a direct remedy against the Government might be as a
substitute for individual official liability, the sovereign still remains immune to
suit.") (Harlan, J., concurring).

### 3. Personal capacity claims

#### a. AR 815809 did not exhaust available administrative remedies as to First Amendment retaliation for earlier filed grievances.

##### i. Exhaustion generally

Defendant argues that Plaintiff's retaliation claim was not exhausted and should, therefore, be dismissed.   (DE 45 at 18-22.)   "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a).   "The plain language of the statute makes exhaustion a *precondition* to filing an action in federal court . . . ."   *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (external citations omitted) (emphasis added).

The FBOP Administrative Remedy Program is set forth in Program Statement 1330.18.   *See also* 28 C.F.R. §§ 542.10-542.19.   "The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."   28 C.F.R. § 542.10(a). The procedure begins with informal resolution (28 C.F.R. § 542.13), continues with initial filing on Form BP-9 (28 C.F.R. § 542.14) and concludes with appeals on Forms BP-10 and BP-11 (28 C.F.R. § 542.15).

As the Supreme Court has instructed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."   *Woodford v. Ngo*, 548 U.S. 81, 90–91

(2006).   "Appeal to the General Counsel [(Form BP-11)] is the final administrative appeal."   28 C.F.R. § 542.15.

### ii.   Grievances potentially at issue

Attached to Defendant's motion are screen prints reflecting nine administrative remedies that Plaintiff has pursued.   (*See* DEs 45-4.)   AR No. 777400 was initiated before the events in question here and, as described on the screen print, relates to "treatment for knee, back, & feet/epidural shot."   (DE 45-4 at 1-2, DE 45-5.)   As I previously noted, AR Nos. 839039, 839043 and 842104 were not exhausted at the time Plaintiff's October 23, 2015 original complaint was filed.   (DE 30 at 15-16.)   The same would be true of AR Nos. 850490 and 851918, each of which appears to have been initiated in February 2016.   (DE 45-5 at 9, 11-12.)   That leaves three grievances potentially at issue:

- **Administrative Remedy No. 799339** was received on October 27, 2014 (R1) and "allege[d] staff misconduct[.]"   (DE 45-5 at 2.)

- **Administrative Remedy No. 808450** was received on January 27, 2015 (F1) and sought to "remain free from retaliation / job & grade back[.]"   (DE 45-4 at 3-4.)

- **Administrative Remedy No. 815809** and its various steps were received on March 31, 2015 (F1) – *with Warden J. A. Terris responding on April 17, 2015* - April 27, 2015 (R1) and June 18, 2015 (A1).   This grievance also petitioned to "remain free from retaliation / job & grade back[.]" (DE 45-4 at 4-5, DE 38 at 23-35.)

(*See* DE 45-5.)

### iii. Plaintiff seems to rely upon AR No. 815809, which was exhausted at the time his original complaint was filed.

To be sure, the content of AR No. 808450 is unclear, other than the FBOP's description that it sought to "remain free from retaliation/job & grade back[.]"   DE 13-4 at 27, DE 45-4 at 3-4.)   Moreover, as will be detailed below, AR No. 808450 appears to have been a pre-dated attempt at what Plaintiff seeks in AR No. 815809. (DE 38 at 31, 35.)   In any event, based on the amended complaint's multiple citations to AR No. 815809 (DE 38 at 1, 4-6), *and* Plaintiff's response that "retaliation for filing earlier grievances" was alleged "in the filing to the central office[,]" (DE 49 at 2) − presumably the aforementioned June 9, 2015 Central Office Administrative Remedy Appeal in AR No. 815809-A1 (DE 38 at 24, 26, 27) − it seems Plaintiff is only relying upon this grievance as exhausting his available administrative remedies regarding his claims against Defendant Chapman. While failure to exhaust is an affirmative defense that Plaintiff is not required to plead, Defendant Chapman has made such an argument in his motion based on AR No. 815809.   (DE 45 at 18-22.)   Thus, if Plaintiff were relying on another grievance to make his argument, the Court would expect to see such direction in

Plaintiff's response; yet, Plaintiff appears to refer only to AR No. 815809.   (DE 49 at 2.)

The claims that are described in AR No. 815809 were administratively exhausted on August 3, 2015 – the date of the FBOP's response to Plaintiff's AR No. 815809-A1 (Central Office Administrative Remedy Appeal).   (DE 38 at 24, DE 45-4 at 5.)   Thus, claims described in this administrative remedy were exhausted at the time this lawsuit was initiated on October 23, 2015.   Nonetheless, Defendant argues that AR No. 815809 "did not allege that Defendant Chapman retaliated against him because of earlier filing prison grievances."   (DE 45 at 19.) Presumably, Defendant Chapman is referring to any of the grievances that pre-dates the March 2015 initiation of AR No. 815809, such as AR Nos. 808450, 799339 or 777400.   (*See* DE 45-4 at 1-4.)   As noted above, the FBOP characterized AR No. 815809 as a request/petition to "remain free from retaliation / job & grade back." (DE 45-4 at 4-5.)   This grievance progressed as follows:

- On March 16, 2015, Plaintiff completed an **"Attempt at Informal Resolution."**   Among other things, this grievance complains of preferential treatment by Chapman in violation of FBOP policy during September and October 2014.   (DE 38 at 34-35; *see also* 28 C.F.R. § 542.13.)[3]   At this stage, Plaintiff

---

[3] Although Plaintiff's grievance materials specifically cite Program Statement 3420.09 (*see* DE 38 at 27, 30, 33, 35), it was rescinded by Program Statement 3420.11 ("Standards of Employee Conduct"), dated December 6, 2013, which provides, in part:   "An employee may not show favoritism or give preferential

suggests he is resubmitting AR No. 808450-F1.   (DE 38 at 35.)

- On March 22, 2015, Plaintiff initiated the formal grievance process by completing a **"Request for Administrative Remedy."**   *His grievance related to the events of September, October and November 2014, and it names Chapman and Finch*.   (DE 38 at 32-33; *see also* 28 C.F.R. § 542.14.)

- On April 17, 2015, Warden J.A. Terris responded, characterizing the grievance as alleging that "a UNICOR staff member acted unprofessionally[,]" and requesting that his "previous job be reinstated."   The response explains that Plaintiff's allegation was referred to the appropriate authority for review and further explains that Plaintiff's request for reinstatement of his job was addressed in AR No. 808450-F1 (Request for Administrative Remedy).   (DE 38 at 31.)

- On April 23, 2015, Plaintiff completed a **"Regional Administrative Remedy Appeal."**   This regional appeal mirrors his earlier described request and takes issue with Warden Terris's response.   (DE 38 at 29-30; *see also* 28 C.F.R. § 542.15.)

- On May 11, 2015, Regional Director Laird responded.   (DE 38 at 28.)

- On June 9, 2015, Plaintiff completed a **"Central Office Administrative Remedy Appeal."**   In addition to several paragraphs repeated from his original request and his regional appeal, Plaintiff's central office appeal adds the following two paragraphs:

  "Inmate Hall is putting the BOP on notice that he plans to pursue a Federal Tort Claim action against the Bureau of Prisons for preferential treatment and racial discrimination

---

treatment to one inmate, or a group of inmates, over another."

which [stems] from inmate freely express[ing] his speech in violation of his First Amendment Rights, thus all conduct, ther[e]after arose as mere *retaliation* which violat[es] . . . his First Amendment Rights and the Bureau of Prisons is liable in the matter herein."

"Recently [seemingly during May 2015], Unicor Supervisor Finch and C/O Jukuri reassigned [two] White male inmates, however inmate Dyer #14184-026 moved from Pres Dept. to Welding 'no loss of grade and full-time' and inmate Allen #69291-061 was moved to Press Dept. 'no loss of grade and full time'.   As the record in Unicor will reflect that inmate Hall and another individual who are Black male inmates were demo[t]ed and los[t] grades and inmate Hall is now on part-time status in Unicor.   All [t]his is *retaliatory* and in clear violation of his First Amendment Rights."

(DE 38 at 26-27 (emphasis added); *see also* 28 C.F.R. § 542.15.)

- On August 3, 2015, National Inmate Appeals Administrator, Ian Connors, responded, although it appears to have been delivered to Plaintiff on August 18, 2015.   (DE 38 at 24-25.)

(DE 38 at 24-35.)

### iv.   AR No. 815809-F1 (Request for Administrative Remedy) does not properly exhaust the amended complaint's retaliation claims against Chapman.

The Court should conclude that the initial filing and appeal in AR No. 815809 did not properly exhaust Plaintiff's available administrative remedies as to his amended complaint's retaliation claims.   True, Plaintiff's March 2015 AR No. 815809-F1 (Request for Administrative Remedy BP-9) and Plaintiff's April 2015

AR No. 815809-R1 (Regional Administrative Remedy Appeal BP-10) each fairly

encompass many of the *factual allegations* within Plaintiff's January 2017 amended

complaint as to Defendant Chapman and the events of July, September and October

2014.   (*Compare* DE 38 at 2-6 *with* DE 38 at 29-30, DE 38 at 32-33.)

However, the first and second stages of this grievance and its initial appeal

focus on "preferential treatment" and "unprofessional conduct," not on retaliation

for previously filed administrative grievances.    Accordingly, my prior report and

recommendation acknowledged that the *original complaint*'s allegations (that

Defendant Chapman exercised "preferential treatment" in violation of FBOP

3420.11 during September 2014 and October 2014) were contained within each of

the three stages of the formal administrative remedy process for AR 815809.    (*See*

DE 30 at 19-20.)

Nonetheless, that Plaintiff's initiating grievance and first appeal do not

specify the First Amendment retaliation legal theory under which his amended

complaint is brought is not, by itself, fatal.    *See Strong v. David*, 297 F.3d 646, 650

(7th Cir. 2002) ("When the administrative rulebook is silent, a grievance suffices if

it alerts the prison to the nature of the wrong for which redress is sought. As in a

notice-pleading system, the grievant need not lay out the facts, articulate legal

theories, or demand particular relief. All the grievance need do is object intelligibly

to some asserted shortcoming."); *Norwood v. Robinson*, 436 F. App'x 799, 800 (9th Cir. 2011) ("Although the grievance did not advance the legal theory of retaliation, it gave the prison adequate notice of the harm being grieved."); *Jones v. Lewis*, 334 F. App'x 66, 68 (9th Cir. 2009) ("a prison grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought, and it need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved.") (citing *Griffin v. Arpaio*, 557 F.3d at 1120).

Instead, it "'is sufficient for a court to find that a prisoner's [grievance] gave prison officials *fair notice* of the alleged *mistreatment or misconduct* that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.'" *LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009) (quoting *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir.2006) (emphases added)). Here, without the first or second grievance stages addressing the administrative remedy or grievance process, Defendant Chapman and/or the MDOC would not have had fair notice that the claims against them set forth in AR 815809-F1 were based on retaliation for Plaintiff's *previously filed* grievances, such as AR No. 777400-F1 (initiated April 30, 2014), AR No. 799339-R1 (initiated October 27, 2014), or AR No. 808450-F1 (initiated January 27, 2015).[4] *See, e.g., Bullard v.*

_____

[4] For example, Plaintiff's amended complaint alleges that "[t]he claims of retaliation, one through four, are claims of retaliation from filing Administrative Remedies per

18

*Sundstrom*, No. 16-12918, 2017 WL 4080551, at *3 (E.D. Mich. Aug. 14, 2017) (Davis, M.J.), *report and recommendation adopted*, No. 16-CV-12918, 2017 WL 4073958 (E.D. Mich. Sept. 14, 2017) (Drain, J.) ("While a grievance is not a summons and complaint, a review of the grievance, the appeals, and the responses do not suggest that prison officials were put on notice of any threats by Sundstrom of writing misconduct tickets or placing plaintiff in segregation.").

It appears that Plaintiff does not mention retaliation until the third and final stage of AR 815809 (DE 38 at 26-27). Indeed, Plaintiff seems to admit that retaliation was not mentioned until the June 2015 Central Office Administrative Remedy Appeal (815809-A1), when he states that, "[i]n this case it was alleged in the filing to the central office." (DE 49 at 2.) However, he also asserts that the Central Office "refused to address it by ignoring the issue." *Id.*

Here, the Court should agree with Defendant Chapman that "Plaintiff's mention of retaliation at the last step of the grievance process does not establish exhaustion of remedies." (DE 50 at 4-5.) By way of background, the Sixth Circuit has previously concluded that a Plaintiff "properly exhausted his claim because he invoked one complete round of the Department's grievance procedures

---

Bureau Policy and Institutional Policy." (DE 38 at 5.) He also alleges that Defendant Chapman "has clearly violated his First Amendment Rights by retaliation for filing []informal resolutions, and following the Bureau's Administrative Remedy process as a whole." (DE 38 at 6-7.)

and received merits-based responses at each step." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 326 (6th Cir. 2010).   Defendant invokes this holding in defense of his claims that proper exhaustion requires "merits-based responses at each step."   (DE 50 at 4.)   *See Cook v. Caruso*, 531 F. App'x 554, 563 (6th Cir. 2013) ("For *Reed– Bey*'s holding to apply, [Plaintiff] would have had to receive 'merits-based responses *at each step*.'") (quoting *Reed–Bey,* 603 F.3d at 325 (emphasis added)).

As this Court has recently explained, "the leading purposes of the exhaustion requirement are met where prison officials were alerted to the plaintiff's complaints, they addressed all of plaintiff's allegations on their merits, and the litigation was improved by the preparation of useful record."   *Bullard*, 2017 WL 4080551, at *3 (citation omitted) (grievance did not "fulfill these purposes as to any conduct that would support a retaliation claim[,]" where Plaintiff alleged that Defendant "threatened him with misconduct tickets and also made threats to have him placed in segregation[,]" but Plaintiff did not "mention these allegations in any step of the grievance process.").   Plaintiff's initiating grievance in AR 815809 did not provide prison officials with "fair notice of the alleged mistreatment or misconduct[,]" here, retaliation for previously filed grievances (such as AR Nos. 808450, 799339 or 777400), "that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.'"   *LaFountain*, 334 F. App'x at 740.   Thus,

the Court should conclude that AR 815809 did not operate to exhaust Plaintiff's available administrative remedies as to his First Amendment retaliation claims against Defendant Chapman.[5]

> **b.** **Plaintiff's amended complaint does not state an equal protection claim.**

Plaintiff alleges that he has an "equal protection claim" against Defendant Chapman.   (DE 38 at 2.)   "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment ... burdens a fundamental right, targets a suspect class, or has no rational basis." *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 256 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 2013, 195 L. Ed. 2d 216 (2016) (quoting *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano,* 648 F.3d 365, 379 (6th Cir. 2011)).

The Court should agree with Defendant that the amended complaint "does not . . . begin to state an equal protection claim."   (DE 45 at 10-11 n.1.) Preliminarily, Plaintiff does not respond to this argument.   (DE 49.)   Thus, Defendant's position on this issue is unopposed.   More to the point, even if the Court considered Plaintiff's allegation that he was "the only one who was docked

---

[5] If the Court agrees with this conclusion, then it need not address Defendant's argument that he is entitled to qualified immunity as to Plaintiff's First Amendment retaliation claim.   (DE 45 at 17-28.)

pay, even though every inmate 'clocks out' and 'clocks in' at the same time . . . [,]"

Plaintiff further alleges that this was done "as retaliation."   (DE 38 at 4.)   The

Undersigned appreciates the context of Plaintiffs' passing comment that he "has a

personal capacity and equal protection claim against the defendant[,]" (DE 38 at

1-2), as my December 12, 2016 report noted that, arguably, Plaintiff's *original*

*complaint* intended "an equal protection claim to the extent he claims Chapman

singled him out[,]" and recommended that "only Plaintiff's *personal capacity equal*

*protection* claims against Defendant Chapman concerning the events of September

and October 2014 . . . surviv[e] the dispositive motion at bar."   (DE 30 at 9, 27-28

(emphasis added).)   However, these allegations have since been superseded by

those in the *amended complaint*, which, as Defendant points out, is based in

pertinent part on complaints of retaliation for engaging in the administrative

grievance process.   (DE 45 at 10-11 n.1.)

### E.   Conclusion

Consistent with the foregoing decision, Plaintiff's amended complaint against

Defendant Chapman alleges First Amendment retaliation claims based on Plaintiff

having engaged in the prison's grievance procedure.   (Section II.D.1.)   Plaintiff's

official capacity claims are barred by sovereign immunity.   (Section II.D.2).   As

to Plaintiff's personal capacity claims, AR 815809 did not exhaust available

administrative remedies as to Plaintiff's First Amendment retaliation claims against

Chapman, and Plaintiff has not stated an equal protection claim against this

Defendant.    (Sections II.D.3).    For these reasons, the Court should **GRANT**

Defendant Chapman's March 27, 2017 motion to dismiss (DE 45) the amended

complaint (DE 38).

## III.   PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).    Failure to

file specific objections constitutes a waiver of any further right of appeal.    *Thomas*

*v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d

505 (6th Cir. 1991).    Filing objections that raise some issues but fail to raise others

with specificity will not preserve all the objections a party might have to this Report

and Recommendation.    *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390,

401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,

1273 (6th Cir. 1987).    Pursuant to Local Rule 72.1(d)(2), any objections must be

served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2,"

*etc.*   Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.    Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.    Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).    The response must specifically address each issue raised in the

objections, in the same order, and labeled as "Response to Objection No. 1,"

"Response to Objection No. 2," *etc.*    If the Court determines that any objections

are without merit, it may rule without awaiting the response.


Dated: December 20, 2017            s/Anthony P. Patti
                                    Anthony P. Patti
                                    UNITED STATES MAGISTRATE JUDGE


### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record
on December 20, 2017, electronically and/or by U.S. Mail.

                                    s/Michael Williams
                                    Case Manager for the
                                    Honorable Anthony P. Patti

24